UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:11-cr-00239-TWP-KPF |
| CHRISTOPHER JUSTIN EADS, | ) | |
| Defendant. | ) | |

## ENTRY DENYING MOTION FOR NEW TRIAL

This matter is before the Court on Defendant Christopher Justin Eads' ("Mr. Eads") pro se, Motion for New Trial. For reasons explained in this Entry, the Motion for New Trial (Dkts. 83-4, 87, 95 and 99) filed by Mr. Eads is **DENIED**.

## I. BACKGROUND

On October 26, 2011, Detective Darin Odier ("Det. Odier") with the Indianapolis Metropolitan Police Department was conducting an online investigation to identify persons possessing and sharing suspected child pornography using internet share and exchange files. Detective Odier was able to download shared files which he believed depicted images of child pornography from an IP address. The subscriber of the IP address was identified as Christopher Eads and the server address was identified as 311 Grant Street, Apt. B, Brownsburg, Indiana. Detective Odier requested, and a Marion Superior Court Magistrate issued, a search warrant for said address. During the search, child pornography was found loaded on a computer in the residence belonging to Mr. Eads and his wife, Rachael Smith Eads ("Mrs. Eads"). Following execution of the search warrant, Mrs. Eads allegedly made statements which implicated her husband criminally, to wit: Mr. Eads told her he was a secret special agent with the FBI, that he

worked undercover, and as a part of his duties, he was to download and view child pornography and turn over the information to his boss.

On December 21, 2011, a five count indictment was filed charging Mr. Eads with: (1) violation of 18 U.S.C. § 2252(a)(2) by distributing child pornography; (2) violation of 2252(a)(4)(B) by possessing child pornography; (3) violation of 18 U.S.C. § 922(g) felon in possession of a firearm; (4) violation 18 U.S.C. § 912 by impersonating a special agent of the Federal Bureau of Investigation; and (5) violation of 18 U.S.C. § 1512(b)(1) by unlawfully tampering with a witness. The Magistrate Judge appointed Mr. Eads counsel from the Federal Community Defender Agency ("FCD"). FCD counsel, William H. Dazey Jr. ("Mr. Dazey"), filed a Motion in Limine and Memorandum (Dkts. 40 and 41) wherein he gave notice that Mrs. Eads had been appointed counsel, that she enjoys a marital testimonial privilege protecting marital communications and that neither Mr. nor Mrs. Eads had knowingly waived any of the privileges associated with marriage in connection with Mr. Eads' trial. In response, the Government agreed that it would not offer Mrs. Eads' statements made during the search of the marital residence and informed the Court that it did not plan on calling Mrs. Eads during its case-in-chief. If Mrs. Eads testifies, however, the Government would argue that the privileged evidence was admissible for impeachment purposes. (See Dkt. 50 at 2).

From February 21, 2012 until February 24, 2012, a four-day jury trial was held in this criminal matter on three of the counts charged: (1) distributing child pornography; (2) possessing child pornography; and (5) unlawfully tampering with a witness. On February 24, 201, the jury returned a guilty verdict on all three counts.

Importantly, Mr. Eads elected to represent himself in the jury trial of this matter. On February 12, 2012 Mr. Eads filed a Notice of Intent to Exercise Right of Self-Representation

(Dkt. 51) during his speedy trial which was scheduled to begin on February 21, 2012. On February 17, 2012, the Court conducted a *Faretta* hearing wherein Mr. Eads was advised that while he has a constitutional right to self-representation, he is entitled to court-appointed counsel. Further, the Court advised Mr. Eads of the nature of the charges, the penalties he was facing and inquired as to Mr. Eads' educational background, and familiarity with the rules of evidence and trial procedure. The Court encouraged Mr. Eads to allow FCD counsel to represent him in light of the hazards and disadvantages of self-representation. Mr. Eads informed the Court that he understood the penalties he might suffer if found guilty, and in light of all the difficulties of self-representation he still desired to represent himself and give up his right to be represented by a lawyer. The Court found that Mr. Eads' waiver of counsel was knowing and voluntary and appointed Mr. Dazey, Mr. Eads' former FCD counsel, to serve as standby counsel.

On March 8, 2012, within fourteen days of the jury's verdict being returned, Mr. Eads filed the first of several Motions for New Trial. While the grounds of each motion were similar, the Court accepted Dkt. 99 as Mr. Eads' final submission which contained the following twenty-four (24) grounds for a new trial:

1) I was on anxiety medication during the trial while I was in the Marion County Jail. The medication did make me drowsy and loopy.

2) Lind (sic) Davis has alibi information she was not asked about or testified to, she just found new evidence of my wife and myself whereabouts on October 26th which the police said I was home.

3) I was denied a critical witness from CPS who would testify someone did call and report child pornography in our home two weeks before I was arrested. Her name is Lakisha and she was asked to be a witness, she works for CPS and there have been 15 calls and reports to her about child pornography before I was ever even arrested. The government said at trial the police found it by trolling the internet, I have the CPS reports from Lakisha.

4) I asked for a witness to be subpoenaed during trial, William Dazey said there we not enough time to request a new witness to court. The witness is a police officer

with Brownsburg and he has information about Nathan Asbury that would of conflicted with others testimonies. He should have been allowed to testify, and I told Mr. Dazey I needed him as my witness.

5) The government should not of been allowed to listen or record my jail calls while I was acting as my own attorney. I believe this violated attorney/client privilege. I was preparing my case and the government was listening to my calls.

6) Rule 403 – I believe the jury should not of been allowed to view the videos and pictures of little babies being raped by men, this was sick and the jury was crying when they had to look at this. <u>No one</u> wants to see something like what they showed them, I <u>know</u> the jury had already made up their minds about this trial and me once they saw this. The jury did not care if I was guilty or not. I believe these images were the results of me being found guilty of this crime. I objected to the videos and images being viewed because it was extremely prejudicial. It should never have been shown, the jury was crying and a mistrial should have been granted. This was not a fair trial, I have not did anything illegal.

7) I asked William Dazey to get me the jail calls so I could play some during the trial; William Dazey never got me my evidence that he could of very easily of got from his office of the government. I requested the jail calls <u>before</u> I acted as my own counsel, he was still my attorney while I requested the jail calls, I should have been allowed to present my evidence at trial.

8) Det. Odeir should of never been allowed to mention a past conviction of theft, Rule 403 – I never was allowed to speak about my character as a father or good deeds, Det. Odeir showed an act of bad character when he talked about my past arrest for theft. I then should have been allowed to talk about my character also.

9) The Government's witnesses should have been separated like my witnesses had to be, the Government's witnesses were able to hear all the testimony and talk and prepare what they were going to say, this was not fair.

10) Nathan Asbury was a key witness in my case and the Government cannot find him, he is running with warrants and I believe I have a right for him to testify, the government has Nathan Asbury on their witness list also. If they can't find the person who set me up I believe I can't have a fair trial, he is a big part in this case.

11) Rachael Eads is a critical witness in this case, she has been threatened by the Government, FBI, police, prosecutor's office and even her own court appointed attorney, that if she said anything on my behalf she would go to jail too.

12) Rachael Eads was ready to testify at trial and her attorney and Bill Dazey said she was not going to testify, this was a lie!!! I asked for a continuance which was denied by the Court.

13) Rachael Eads' attorney would not let her testify or permit her to come in the courtroom when she was called, her attorney said "no". (Interference with a defense witness; *U.S. v. Vavages*, 151 F.3d 1185 (9th Cir. 1998))

14) Rachael Eads has seen Nathan Asbury with child pornography on that same computer, she can testify that Nathan's nickname is (TASK) Tough ass street kid. TASK is the folder the child porn was found in on the computer. She will testify she knows TASK is Nathan's folder on that computer, she has seen child porn with Nathan Asbury.

15) Somehow I was found guilty of telling my wife what to say. She has testimony that the Government can't say I told her what to say. Rachael will testify to things that were never talked about or recorded by the Government.

16) The Government cannot say I told my wife to say everything she has to testify to, we <u>never</u> talk about all the things she knows. She is my wife and knows Nathan Asbury very well and is also my strongest witness.

17) Nobody should have ever threatened my wife's freedom and our children being took away if she told what she knows, the Government and this trial was 100% corrupt. She wants to testify.

18) I asked for a continuance which was denied to speak with my wife to see if she might be scared to take the stand. When I talked to my wife she told me she never said anything and she was ready to testify, her attorney wouldn't let her come in the courtroom when it was time. She then fired her attorney, and has filed a complaint with the bar association.

19) Rachael knows my whereabouts on October 25 and 26th when the government says I was home downloading illegal things online. She can prove my alibi as well as Linda Davis knows my whereabouts on this critical date.

20) I don't believe I had enough time to prepare my own case for trial. I was rushed, I didn't have all my evidence I requested, I didn't have all my witnesses I asked for, I was on medication and had two weeks to prepare with limited resources, and no help from the standby attorney, my wife is the one who got <u>everything</u> I needed for trial.

21) The Government kept talking about the gun, which I was not on trial for, I felt I had to defend myself about the guns, I believe Rule 403 also applies, the gun videos had no relevance at this trial and misled the jury.

22) My wife and family said they heard the verdict told to the prosecutor before it was read, she knows who said the verdict to the government. <u>No one</u> is allowed to know the verdict before the jury reads it.

23) I don't believe the government had enough evidence to even suspect me of this crime, me and my wife have told them who was on that computer and have tr4ied to help the government. Nathan's info is on the computer, his Myspace. My wife's tax, credit card, insurance are also on the computer. Just because I bought the computer and my info is also on the computer they say it was me. This is not true. How can these people take away someone's life just because they want to?

24) I'm a good husband and a father of three. I have never hurt a child. I personally would think a child molester has a profile, I don't think they would have children and never been accused of something before. This is crazy, is it really that hard to believe that someone else has done this? I have missed my son's first birthday, first walk, my daughter's seventh birthday, the birth of my new daughter, I have missed more than I ever thought was possible, for what? What have I done??? I miss my wife and children, no one should have to go through this and miss so much of my kids' lives. Just as much as them children in them horrible videos and pictures are victims, so am I and my family as well. Myself, my wife my children or my family did not ask for any of this unjust.

For convenience sake, Mr. Eads' grounds for a new trial can be categorized as (1) newly discovered evidence and (2) other grounds, including assertions that he was on anti-anxiety medication which affected his ability to represent himself at trial, allegations that certain witnesses were not allowed to testify, allegations that his wife, Mrs. Eads, was threatened if she testified, allegations that the jury should not have been allowed to view certain evidence, and allegations that stand-by counsel did not perform adequately.

## II. LEGAL STANDARD

Mr. Eads bears a heavy burden on his motion for new trial. Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "[C]ourts have interpreted [Rule 33] to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir.1989). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos,* 20

F.3d 280, 285 (7th Cir.1994) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990), *amended on other grounds,* 910 F.2d 467 (7th Cir.1990)). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed.R.Crim.P. 33(b)(2).

Motions for new trials in criminal cases are addressed to the sound discretion of the trial court. It is well settled that such motions are not favored and should be granted only with great caution and only in exceptional circumstances. See *United States v Balistrieri*, 577 F. Supp 1532 (1984). The Seventh Circuit reviews a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Woods*, 301 F.3d 556, 562-63 (7th Cir. 2002) (district court properly denied defendant's motion for a new trial because "new evidence" was at best, cumulative impeachment evidence that could have been obtained with minimal investigation).

Evidentiary rulings by the trial court do not warrant a new trial unless the defendant can clearly demonstrate that the court abused its wide discretion. *United States v. West,* 670 F.2d 675, 682–8 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). In order to prevail on a motion for a new trial, a defendant must demonstrate that substantial prejudicial error occurred during the trial. The burden upon a defendant to establish the existence of prejudicial error is a heavy one. It is not satisfied by unsupported, conclusory allegations or speculation. See, e.g., *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956); *United States v. Redfield,* 197 F.Supp. at 562; *United States v. Gross,* 375 F.Supp. 971, 974–5 (D.N.J.1974), *affirmed,* 511 F.2d 910 (3d Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

The jury's verdict, however, is entitled to presumptive validity and the trial court should exercise its authority in this area very sparingly and only in the most exceptional cases when it is

convinced that a gross injustice will have been done if it fails to act. *US v Gross*, 375 F.Supp. at 973–4.

## III. DISCUSSION

**1.     Newly Discovered Evidence**

To obtain a new trial based on newly discovered evidence, a defendant must show that the evidence: (1) was discovered after trial; (2) could not have been discovered sooner with due diligence; (3) was material and not simply impeaching or cumulative; and (4) if presented at a new trial would probably result in acquittal. *United States v. Reyes*, 542 F.3d 588, 595 (7th Cir. 2008). In his Motion, Mr. Eads alleges only that "new evidence has been found." Mr. Eads alleges specifically that his mother Linda Davis "has alibi information she was not asked about or testified to, she just found new evidence [sic] of my wife and myself whereabouts [sic] on Oct, 26th which [sic] the police said I was home." At no time does Mr. Eads proffer the nature of the newly discovered evidence, when it first came to his knowledge or how such evidence would result in a finding of acquittal.

Mr. Eads' argument fails as he himself called Linda Davis as a witness and he had the opportunity to question her about his whereabouts on October 26, 2011, but failed to do so during the trial. Additionally, Mr. Eads has presented no affidavits, testimony, or even argument to support his claims that his mother learning of his whereabouts on October 26, 2011 is newly discovered evidence, or why the evidence could not have been discovered prior to trial.

Finally, Mr. Eads was able to present evidence and argument to the jury that he was not at his residence on October 26, 2011. Defendant's father, Harry Eads Jr., testified that while he didn't know the exact date, he did recall Mr. and Mrs. Eads were in Lafayette "moving out of the business", around October 26, 2011 and in Mr. Eads jail telephone calls that were played to the

jury, Mr. Eads stated repeatedly, "on the 26th we were gone" and "you've got to say that on the 26th we weren't even there when they are saying all this stuff was done." The Court finds that such "alibi" evidence from Mr. Eads' mother, even if presented, would be cumulative and probably not change the outcome of the jury's verdict.

**2.     Other Grounds**

Federal Rule of Criminal Procedure 33(b)(2) provides that a district court may vacate any judgment and grant a new trial if the interest of justice so requires.

**A.     Anti-anxiety medication affected Mr. Eads' ability to represent himself at trial.**

Mr. Eads alleges that he was on medication during the trial which made him "drowsy and loopsy". During the trial, Mr. Eads did not inform the Court that his anxiety medication was affecting his ability to proceed as his own counsel. Mr. Eads has not tendered any evidence that he was, in fact, taking anxiety medication during the trial while he was acting as his own counsel. He has not set forth any concrete facts for this Court to consider such as the type of medication, the dosage, the doctor who prescribed it, nor does he explain why he failed to raise this issue regarding his competency prior to or during trial. Also, there were several times during trial when the Court asked Mr. Eads if he wished to have standby counsel take over for him and Mr. Eads declined each time.

The relevant factors to be considered in assessing the issue of competency are a defendant's "irrational behavior, his demeanor at trial and any prior medical opinion on competence to stand trial. There must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of his competency." *Matheney v. Anderson* 60 F.Supp.2d 846 (N.D.Ind., 1999). At no time did the Court observe Mr. Eads appearing disoriented, drowsy or "loopsy". In fact, Mr. Eads was alert and quite competent during the trial proceedings. Mr. Eads

9

gave logical and persuasive opening and closing arguments, made appropriate objections during trial, and performed proper direct and cross-examination of witnesses. Mr. Eads has failed to meet his burden that a new trial is warranted due to his lack of competency.

   B.     **Certain witnesses were not allowed to testify.**

Mr. Eads proffers that several witnesses' testimony would have been critical to his case, however these witnesses were not allowed to testify. Specifically, Mr. Eads asserts that a witness named Lakeshia, from Child Protection Services ("CPS") would have testified that someone called the CPS office to report child pornography in his home; a police officer with Brownsburg would have testified to conflicting information about Nathan Asbury. Nathan Asbury was a "key witness in the case and the Government cannot find him" and Mrs. Eads would have testified that she had seen Nathan Asbury with child pornography on the computer.

Mr. Eads' arguments fail, primarily because as his own counsel, he could have called any of the witnesses. There is no evidence before the Court to support Mr. Eads' allegations that he was "not allowed" to call any of the witnesses complained of. In fact, on February 16, 2012, prior to his self-representation, Mr. Dazey filed an ex-parte motion for issuance of subpoenas (Dkt. 61) and the Court issued an Order (Dkt. 63) directing that subpoenas be issued to fourteen witnesses, including four Brownsburg, Indiana police officers and his wife, Rachael Smith Eads. Mr. Eads at no time requested the issuance of a subpoena to a CPS worker named Lakeshia. Mrs. Eads and the Brownsburg Police officers honored the Court's subpoenas and were present during the trial. Mr. Eads did, in fact, call the four police officers as witnesses to testify on his behalf. As for Mrs. Eads, Mr. Eads specifically indicated to the Court on the final day of trial that he had elected not to call her as a witness.

THE COURT: You may be seated. Mr. Eads, how many witnesses do you have left? Just one.

MR. EADS: Yes, Your Honor.

THE COURT: And that's your wife, Rachel Smith?

MR. EADS: I'm not sure at this point if she will be testifying.

THE COURT: Okay. Well, this is it. Either she's going to testify after the break or we're finished. Do you have any other witnesses or evidence other than your wife?

MR. EADS: No, Your Honor.

THE COURT: Okay. And you're going to continue to exercise your right to remain silent?

MR. EADS: Yes, Your Honor.

THE COURT: Wonderful. Okay. You need to let us know, as soon as we get back from the break, if she's going to testify or not. Her attorney is present. Do you know, does she intend to testify?

MS. BROOKS: She's here, Your Honor. She is present. She understands that this is a court order and not an invitation. And she has spoken to her husband last night and has changed her mind.

THE COURT: Is she going to testify or not? Do you know?

MS. BROOKS: I don't know what she will say when she gets on the stand.

MR. EADS: Your Honor, again, yesterday I knew there was a miscommunication. That's why I was wanting to speak to my wife, you know, in person. Her attorney was not accurate. But at this point, after the break, I will have the decision.

And after the break, the Court specifically questioned Mr. Eads:

> THE COURT: … Mr. Eads, it's my understanding that you are not going to call Rachel Smith. Is that correct?
>
> MR. EADS: Yes, Your Honor.
>
> THE COURT: All right.

With respect to the witness Nathan Asbury, Mr. Asbury was listed as a witness on both the Government's and Mr. Eads' witness lists, and as such, Nathan Asbury was within the power of either party to produce. The information presented to the Court by both the Government and Mr. Eads was that Nathan Asbury had a warrant out for his arrest and his whereabouts were unknown. Mr. Eads did not request a continuance or waiver of his speedy trial (prior to the commencement of trial) so that he could have an opportunity to locate Nathan Asbury. In fact, Mr. Eads wanted to proceed with trial on the first setting and he received his request. He cannot now complain that the government could not find Nathan Asbury by the date of his speedy trial.

Finally, Mr. Eads has not shown how the testimony of any of the witnesses that he claims he was "not allowed" to call would have resulted in an acquittal.

    **C.    Rachael Eads was threatened if she testified.**

Mr. Eads alleges that his wife was threatened (presumably with prosecution for perjury and loss of her child) by the government agents and her own lawyer; however Mr. Eads' assertions lack foundation. Although someone who purports to be Rachael Eads mailed letters to the Court which state "When the police came in our house on November 15, 2011 with a search warrant, I lied to them because they were threatening me that CPS was coming to take my son and I was going to jail" (Dkt. 83 at 5) and another letter reads " I was named as a witness and my

attorney said if I testify I would get up to sixty years to life and the cps will take my children away"(Dkt. 83 at 6), these letters are not verified; therefore the Court can give them little weight.

Mr. Eads cites *United States v. Vavages*, 151 F.3d 1185 (9th Cir.1998) to support his position that substantial government interference hampered Mrs. Eads' choice to testify. However, the facts in this case are clearly distinguishable from those in *Vavages*. At issue in *Vavages* was the prosecutor's language in having three to four face to face meetings with the witness' lawyer warning that the prosecutor did not believe the defendant's alibi defense, that the prosecutor could bring charges of perjury if the witness testified falsely, and that the prosecutor could withdraw from the plea agreement with the witness. During his trial, Mr. Eads did not request a hearing outside the presence to the jury to explore the issue of whether Mrs. Eads had been threatened. Mr. Eads presents no facts that the undersigned government counsel had the kind of communications with Mrs. Eads or her counsel that "coerced" Mrs. Eads off the stand. To the contrary, Mrs. Eads obeyed her subpoena and was present in the courthouse, available to be called to the witness stand each and every day of the trial.

Mrs. Eads and her attorney, Doneka Rucker-Brooks ("Ms. Brooks"), were present on day three and four of the trial, the dates when Mr. Eads presented his witnesses. On day three, Ms. Brooks addressed the issue of Mrs. Eads' testimony on the record:

> THE COURT: Okay. And it's my understanding that Mr. Eads wishes to call Rachel Smith Eads, his wife, as his next witness.
>
> MR. EADS: But she seems to be pretty scared.
>
> MS. BROOKS: She is scared. She does not want to be here, she does not want to testify.

13

THE COURT: (addressing Mr. Eads) Now, you can have her -- make her testify.

I mean, you can call her as a witness. She's under subpoena. And a witness doesn't get to pick or choose.

MR. EADS: Not -- not today.

On the final day of trial, Ms. Brooks indicated again, on the record, that Mrs. Eads was present and available to testify should Mr. Eads desire to call her to the witness stand. Again, Mr. Eads declined to call his wife as a witness. Ms. Brooks stated that Mrs. Eads was willing to testify, however counsel informed Mr. Eads that "she did not know" what Mrs. Eads "would say when she gets on the stand". A "defendant alleging substantial government interference with defense witness' choice to testify is required to demonstrate misconduct by a preponderance of the evidence". *Ibid.* Mr. Eads has failed to meet his burden. Here, there is no evidence that any government attorneys committed misconduct which resulted in Mr. Eads not calling his wife as a witness. Instead, Mr. Eads' decision to not call his wife as a witness appears to have been strategic, either because he did not know how his wife might testify or because of her delicate condition. During his closing argument, Mr. Eads informed the jury "I did not want my wife to get on the stand today and testify, because she's pregnant and I didn't want to take a chance of her…." There is no evidence to support Mr. Eads conclusory allegations that he did not present his wife as a witness because she had been threatened.

    **D.    The jury should not have been allowed to view certain evidence.**

Mr. Eads complains of several evidentiary violations as grounds for a new trial. However, evidentiary rulings by the trial court do not warrant a new trial unless the defendant can clearly demonstrate that the court abused its wide discretion. *United States v West*, 670 F.2d 675 682-8 (7th Cir.). Mr. Eads complains that his jail telephone calls were privileged

communications made during the time he was acting as his own counsel; however the attorney-client privilege is not available to Mr. Eads because he is not a lawyer. See *Moorehead v Lane*, 125 F.R.D. 680, 686 (C.D. Illinois, 1989). He asserts the jury should not have been allowed to view the child pornography evidence, however, the child pornography was relevant to the Government meeting their burden of proof that the images located on Mr. Eads' computer were in fact child pornography. Mr. Eads opened the door himself to his prior conviction for theft; however, the Court gave a limiting instruction that the conviction is not relevant to any issue in this case. If Mr. Eads observed that the Government's witnesses violated the separation of witness order, he should have brought that fact to the attention of the Court. Evidence concerning a handgun was admitted for the limited purpose of identity and the jury was so instructed. And, the Court appropriately denied Mr. Eads' requests to continue the jury trial at the end of the third day of trial, so that he could speak with his wife. It was clearly within the Court's discretion to deny a continuance after the trial has begun. District courts have wide discretion to control their dockets by granting or denying continuances. *U.S. v. Avery*, 208 F.3d 597C.A.7 (Ind.), 2000. Further, Mr. Eads was not prejudiced by the Court's denial of his request for a continuance as he was able to speak with his wife that evening, prior to the last day of trial.

### E. Stand-by counsel did not perform adequately.

Finally, Mr. Eads complains that standby counsel, Mr. Dazey, did not perform adequately when he informed Mr. Eads that his request to call a new witness in the middle of the trial was untimely and that Mr. Dazey failed to get him copies of the "jail calls so that he could play some during the trial". Mr. Dazey accurately informed Mr. Eads that there was not enough time to request a new witness to court in the middle of the trial. Even the defendant is bound by the court's discovery order. Further, the "new" witness was an officer with the Brownsburg Police

15

Department and Mr. Eads had already subpoenaed and called as witnesses four officers from the Brownsburg Police Department.

Mr. Eads' self-representation began on February 17, 2012 and Mr. Eads himself could have made the request for copies of the jail telephone calls. Because Mr. Eads waived his right to counsel and exercised his right to self-representation, Mr. Dazey's participation in the trial was only as stand-by counsel. Mr. Eads cannot complain that Mr. Dazey failed to represent him effectively during the trial, because Mr. Eads fired Mr. Dazey as his attorney. A defendant is not entitled to relief for the ineffectiveness of standby counsel." See *U.S. v Woodard,* 2008 WL 513159 (N.D. Ind. 2008).

### III. CONCLUSION

For the reasons stated herein, Mr. Eads has failed to meet his burden to show that a gross injustice would occur if he is not granted a new trial. Accordingly, Mr. Eads' Motion for New Trial (Dkts. 83-4, 87, 95 and 99) is **DENIED**.

SO ORDERED.   05/04/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Gayle Helart
UNITED STATES ATTORNEY'S OFFICE
gayle.helart@usdoj.gov

William E. Marsh
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.marsh@fd.org

Zachary A. Myers
UNITED STATES ATTORNEY'S OFFICE
zachary.myers@usdoj.gov

Christopher Justin Eads, #208998
Grayson County Jail
320 Shaw Station Road
Leitchfield, Kentucky  42754